

**SIGNED this 4 day of June, 2015.**

_____
**John T. Laney, III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-71214-JTL |
| Kimrow, Inc., ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| Kimrow, Inc., ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Contested Matter |
| ) | |
| Christopher Cohilas, Receiver, ) | |
| ) | |
| Respondent. ) | |

Before
John T. Laney, III
United States Bankruptcy Judge

Counsel

    For Movant:                      Ward Stone, Jr. & Christopher Terry
                                                577 Mulberry Street, Suite 800
                                                Fickling and Co. Building
                                                Macon, GA 31201

    For Respondent:           Walter Kelley
                                                Post Office Box 70879
                                                Albany, GA 31078

# MEMORANDUM OPINION

This contested matter comes before the Court on a notice/motion of conversion to Chapter 7 filed by the Debtor (*see* Dkts. 107 and 109) (such notice/motion hereinafter the "Conversion"), and an objection to the Conversion by Christopher Cohilas, Respondent, who claims an interest in this case as receiver. This proceeding is core under 28 U.S.C. § 157(b)(2). The Court states its findings of fact and conclusions of law separately pursuant to Federal Rule of Civil Procedure 52, made applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052 to this contested matter through Bankruptcy Rule 9014(c).

## FINDINGS OF FACT

The Debtor filed this Chapter 11 case September 23, 2014. On December 17, 2014, this Court orally granted Respondent's motion to dismiss this case, primarily because the Debtor was operating without a valid sales tax identification number in violation of Georgia law and could not obtain a valid sales tax identification number. However, upon the January 29, 2015 hearing on the Debtor's timely filed motion for reconsideration (*see* Dkt. 82), this Court vacated its order dismissing the case, holding that the state law requiring the sales tax identification number is preempted under § 362 of the Bankruptcy Code.[1] The Respondent has since filed a motion requesting the Court to alter or amend that order (*see* Dkt. 112), and the Court has not yet ruled on this motion.

On February 11, 2015, the Debtor sought this Conversion. The Respondent opposes the Conversion, filing a Response with Opposition (Dkt. 114). The hearing on the Conversion was initially scheduled for March 18, 2015. The Respondent moved to continue the hearing on the Conversion until April 10, 2015, arguing that it needed time to review certain operating reports recently filed by the Debtor and had ordered transcripts of several past hearings that would be relevant to the whether the Court should grant the Conversion (*see* Dkt. 120). The Debtor opposed the motion to continue, arguing that because of its absolute right to convert under

---

[1] Unless otherwise indicated, all references herein to "section" or "§" refer to a corresponding section of the Bankruptcy Code, and all references to the "Bankruptcy Code" relate to the corresponding sections of Title 11 of the United States Code.

2

§ 1112, the transcripts and operating reports were irrelevant (*see* Dkt. 124).  The Court had a hearing on the motion to continue, at which time the Debtor argued that the Debtor, not being excepted from conversion by § 1112(a), has an absolute right to convert from Chapter 11 to Chapter 7, and, in the alternative, even if there were such an extreme circumstances (or bad faith) exception, the allegations of bad faith by the Respondent were not the type of circumstances that give rise to such an exception.  The Court stated that the Court may need to hold an evidentiary hearing on these matters, depending on its determinations of applicable law.  Accordingly, the Court continued the evidentiary hearing and instructed the parties to file letter briefs on whether the Debtor had a right to convert this case as a matter of law, with particular regard to the potential impact of *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007).  The Court's written Order summarizing this ruling ended by stating: "[T]he Court will endeavor to rule as to the legal issues to be briefed prior to [the hearing as continued] so that the parties will know whether or not that motion will be granted as a matter of law without regard to consideration of facts involving alleged bad faith." (*See* Dkt. 127)

The Debtor filed letter briefs that, among other things, argued that it had an absolute right to convert from Chapter 11 to Chapter 7, and, in the alternative, even if *Marrama* dictated an extreme circumstances (or bad faith) exception, the allegations of bad faith by the Respondent were not the type of circumstances that give rise to such an exception. (*See* Dkts. 129 & 133)  The Respondent treated these contentions on their merits, arguing, among other things, that *Marrama* dictates a bad faith exception and that the facts as alleged by it give rise to such an exception in this case.

As the Court is ruling on this matter as a matter of law, for the purposes of this Opinion, the Court construes the pleadings in a manner most favorable to the Respondent and accepts all of the Respondent's factual allegations as to the Debtor's misconduct as true.  These allegations include the Debtor's gross mismanagement (including failure to properly address post-petition taxes, overdrawing bank accounts, improper bookkeeping, and unauthorized use of cash collateral), bad faith in continuing the Chapter 11 case without hope of an effective

reorganization causing diminution in the estate, perjury (by the Debtor's principal before this Court) and lies (again, by the Debtor's principal) to the Respondent, obstruction of the Respondent in his role as receiver, contempt of court orders, and failure to comply with Chapter 11's reporting requirements.

One point of contention in this case is the Debtor's alleged cause of action against the Respondent under 42 U.S.C. § 1983 (the "1983 Claim"). While the parties agree that the 1983 Claim is the only potential asset held by the Debtor that might be available for liquidation and distribution to creditors, for various reasons unpersuasive to the Court, the Respondent does not think that the Court should consider the claim.[2]

---

[2] The Respondent contends that the 1983 Claim has no value to the estate. However, the Court, after reviewing the draft pleadings of the claim prepared by the Debtor (*see* Dkt. 133, Exhibit A), believes that—regardless of further evidence as to the value, if any, of this claim—the determination of whether this claim will benefit the unsecured creditors is best made by a Chapter 7 trustee.

The Respondent argues that the Debtor is estopped from asserting any value to the 1983 Claim. The Respondent's argument is based on conduct by Debtor's counsel before this Court at the December 17, 2014 hearing on the Respondent's Motion to Convert (Dkt. 68), which motion was amended at that hearing to a motion to dismiss. The Court notes that counsel for the Debtor, in arguing against the conversion or dismissal, stated: "If [the Chapter 11 plan blows up], then, of course, we'll be converting to a [Chapter 7 case], at which time there will be no assets for anyone. Our plan is the only mechanism for getting anyone paid, other than the secured creditor." *See* Oral Argument at 18:03-09, *Cohilas v. Kimrow, Inc. (In re Kimrow, Inc.)*, Dkt. 79, *available at* https://ecf.gamb.uscourts.gov/doc1/052015280071 (attached audio file).

The Eleventh Circuit has delineated "two factors in deciding whether judicial estoppel should apply: first, it must be established that the allegedly inconsistent positions were made under oath in a prior proceeding; and, second, the inconsistencies must have been calculated to make a mockery of the judicial system." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). The statements of Debtor's counsel in its opening argument are considered spoken "under oath." *The Ashton Revocable Living Trust v. Mukamal (In re Palm Beach Fin. Partners, L.P.)*, 527 B.R. 518, 525 (S.D. Fla. 2015) (statements of counsel treated as "under oath"). However, the two positions taken by the Debtor's counsel were not calculated to make a mockery of the judicial system. "[T]he doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence." *Burnes*, 291 F.3d at 1286; *see also Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1294 (11th Cir. 2003) (same). When the Debtor's counsel made the above statement, he did so arguing that the Chapter 11 proceeding was the creditors' best chance of payment, arguing for an additional fourteen days to try work out a deal with the secured creditor. Counsel's statement was then incorrect, as the Debtor had already filed its amended Schedule B listing the 1983 Claim as an asset (*see* Dkt. 62). However, the Debtor's counsel also stated the Debtor's intent to convert to a Chapter 7 should the Chapter 11 plan prove unworkable. It seems possible that the Debtor's counsel had forgotten about the Debtor's claim against the Respondent. To hold otherwise would mean that the Debtor's counsel intentionally misled this Court in violation of his ethical obligations to this Court. The Court does not find this. Accordingly, the Court does not find that the Debtor intended to deceive the Court or work a mockery of justice.

Estoppel is similarly unwarranted under the doctrine of equitable estoppel, which imposes even more rigorous requirements as to intent to deceive. *See Dawkins v. Fulton Cnty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013), *cert. denied sub nom.* 134 S. Ct. 2293 (2014) (requiring proof that "(1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.").

4

### CONCLUSIONS OF LAW

The question presented to this Court is whether there is an extreme circumstances exception to a debtor's right to convert from Chapter 11 to Chapter 7, and if so, whether, as a matter of law, the allegations of the Respondent implicate this exception. The Debtor points to the plain language of § 1112(a), which states: "The debtor may convert a case under [chapter 11] to a case under chapter 7 unless [at least one of three circumstances is present]."[3] The Respondent does not contend that any such circumstance is present in this case. Rather, the Respondent argues that there is an additional exception to the Debtor's right to convert under § 1112(a)—extreme circumstances, otherwise termed as bad faith. There are two textual bases for expanding § 1112(a) to include the extreme circumstances exception: (1) the use of the term "may" rather than "shall;" and (2) § 1112(f)'s provision that notwithstanding § 1112(a), the debtor cannot convert a case "unless the debtor may be a debtor under that chapter."

The first argument contends that because Congress chose the word "may" rather than "shall," Congress meant for courts to have discretion to deny a request by a debtor that was otherwise eligible for the conversion under § 1112. While this argument has some support in the case cited by the Respondent, *In re Adler*, 329 B.R. 406, 408-09 (Bankr. S.D.N.Y. 2005), the Court finds the argument to be completely without merit. The argument might have some merit if the statute stated that the *court* "may" convert the case if the debtor meets the prescribed requirements. However, the statute does not instruct the *court* to take any action but rather addresses the *debtor*, giving the debtor a right—if the debtor meets the statute's prescription—to convert. The language is unequivocal. To say that the Court can add any requirement it deems fit eviscerates the right given by Congress to the debtor. Further, the legislative history cited by the Debtor (though unnecessary in light of the statute's plain meaning) confirms this point, stating that "the debtor [has] an absolute right to convert a voluntarily commenced chapter 11

---

[3] These three circumstances are as follows: "(1) the debtor is not a debtor in possession; (2) the case originally was commenced as an involuntary case under this chapter; or (3) the case was converted to a case under this chapter other than on the debtor's request." 11 U.S.C. § 1112(a).

5

case in which the debtor remains in possession to a liquidation case." S. Rep. No. 95-989 (1978), at 117 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5903, 1978 WL 8531.

The only remaining textual argument for an extreme circumstances exception rests on the proposition that where a Debtor's preconversion conduct is so egregious that the Court would necessarily dismiss the converted case for bad faith upon motion, the Debtor should not be considered as eligible to "be a Debtor under that chapter" as that phrase is used in § 1112(f).

The Debtor's argument against this contention is that the addition of a bad faith exception, even under the guise of § 1112(f)'s eligibility requirements, goes against the plain language of the statute § 1112(a), which provides three, and only three—apparently exclusive—exceptions to a debtor's right to convert. The Debtor's plain language argument is bolstered by legislative history cited above. Additionally, the Debtor correctly notes that eligibility to be a debtor in Chapter 7 of the Bankruptcy Code is generally governed by § 109, which is entitled, "Who may be a debtor." 11 U.S.C. § 109. This commonsense understanding of eligibility is strongly supported by the legislative history of § 1112(f), which states: "[Section 1112(f)] *reinforces section 109* by prohibiting conversion of a chapter 11 case to a case under another chapter proceedings under which the debtor is not permitted to proceed." S. Rep. No. 95-989, at 118, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5904, 1978 WL 8531 (emphasis added). Based on the foregoing, the Court rules that the plain meaning of § 1112(f) does not leave room for an extreme circumstances exception.[4] As correctly noted by the Debtor, it is an indubitable maxim of statutory interpretation that if the meaning of a statute is plain on its face and that meaning is not absurd, the court is bound by that meaning. *See, e.g.*, *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)).

---

[4] *But c.f.*, *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 380 (2007) (Alito, Thomas, Scalia, JJ., dissenting) ("Rather than reading §§ 109(e) and 706(d) together, the Court puts § 109(e) aside and treats § 706(d) as a separate repository of additional requirements (namely, the absence of the grounds for dismissal or reconversion under § 1307(c)) that a Chapter 7 debtor must satisfy before conversion to Chapter 13.").

Against this simple conclusion, the Respondent points the Court to the Supreme Court's decision in *Marrama*. In *Marrama*, the Court examined Chapter 7's conversion provision— § 706(a)—which states: "The debtor may convert a case under chapter 11, 12, or 13 of [title 11] at any time if the case has not been converted under section 1112, 1208, or 1307 of [title 11]." This provision is tempered by § 706(d), which states: "Notwithstanding any other provision of [§ 706], a case may not be converted to a case under another chapter of [title 11], unless the debtor may be a debtor under that chapter."

In *Marrama*, a Chapter 7 debtor concealed on his schedules the previous transfer of his house (which was his principal asset) to a trust in an attempt to protect it from distribution to creditors. Once his lie was exposed, the Chapter 7 trustee informed the debtor of his intention to liquidate the house for the benefit of the creditors of the estate. Upon learning this, the debtor filed a notice of conversion to Chapter 13, which was treated as a motion and objected to as such by the Chapter 7 trustee. The Chapter 7 trustee argued against the conversion on the grounds that it was made in bad faith and in an attempt to defraud creditors, if nothing else, by slowing down the liquidation in Chapter 7. The bankruptcy court denied the debtor's motion, sustaining the trustee's objection, and was affirmed appeal. 549 U.S. at 367-39. The Supreme Court granted certiorari and also affirmed the lower courts' decisions. *Id.* at 371.

In reaching its holding, the Supreme Court first discussed the bankruptcy court's authority to dismiss the converted Chapter 13 case for bad faith under § 1307(c), incorporating these reasons into § 706(d)'s eligibility analysis.

> In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "honest but unfortunate debtor[s]" that the bankruptcy laws were enacted to protect. The text of § 706(d) therefore provides adequate authority for the denial of his motion to convert.

7

*Id.* at 373-74 (citations omitted). However, the Court did not stop here, as if bad faith (or other grounds for dismissal under § 1307) constituted exceptions written expressly into § 706(d). Importantly, the Court went on to invoke § 105(a) and federal court's inherent authority to prevent fraud by use of its procedures to overcome the procedural irregularities of its ruling. The Court stated:

> [T]he broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

*Id.* at 375.

Accordingly, *Marrama* should be read, not as adding § 1307 grounds for dismissal as new exceptions to § 706(d), but merely as directing courts to consider the practical impact of § 1307 when exercising the court's equitable powers under § 105(a) to prevent fraud and abuse of the bankruptcy process potentially prejudicial to creditors.

*Marrama*'s holding does not have a one-to-one application to this case. While the language of § 1112 and § 706 are similar,[5] there are some important distinctions between the conversion sought in *Marrama* and the conversion sought here. First, in *Marrama*, the debtor was seeking conversion to Chapter 13, which—as recognized by the U.S. Court of Appeals for the Eleventh Circuit—imposes a higher duty of good faith than Chapter 7. *See In re Piazza*, 719 F.3d 1253, 1265 (11th Cir. 2013) (recognizing Chapter 13's explicit good faith requirements and ongoing debtor/creditor relationships make Chapter 13's duty of good faith "particularly salient"). Second, in the context of a corporate liquidation where there is no equity for shareholders, misconduct by the corporation's principals is rarely legitimate grounds to dismiss the bankruptcy where the bankruptcy case remains in the best interest of the creditors. Accordingly, there are good reasons to hold that this case falls outside of *Marram*a's holding.

---

[5]    Section 706(a)'s language—"[t]he debtor may convert . . . if [the case has not been previously converted]"—is nearly identical to the language in § 1112(a)—"[t]he debtor may convert a . . . unless . . . ." Further, the operative language of § 706(d) is identical to § 1112(f).

Even if the Court assumes that *Marrama* does dictate an extreme circumstances exception to the right to convert from Chapter 11 to Chapter 7, the Court holds that the Respondent's allegations do not constitute extreme circumstances under *Marrama* or the other cases cited by the Respondent—*Monroe Bank & Trust v. Pinnock*, 349 B.R. 493, 497 (E.D. Mich. 2006) and *In re Adler*—which address conversion from Chapter 11 to Chapter 7. Importantly, in these cases the courts inquired whether allowing a conversion would be prejudicial to creditors and abusive to the bankruptcy process.[6]

In *Adler*, the Debtor sought conversion to Chapter 7 after liquidating in his Chapter 11 case all the assets that would been available for distribution in a Chapter 7 proceeding. 329 B.R. at 410.  The court ordered the immediate distribution to creditors of the amounts in the debtor-in-possession account and dismissed the case because there would be no distribution in a Chapter 7 case and the conversion would do nothing but needlessly delay creditors from trying to collect their debts. *Id.*  In *Monroe Bank*, the debtor's purpose in conversion was apparently to prevent the creditors from reaching the substantial amounts accrued by the debtor during the pendency of the case, which would not be included in the converted Chapter 7 estate. 349 B.R. at 495. The bankruptcy court allowed the conversion, holding that the debtor has an absolute right to convert. *Id*. at 497.  On appeal, the district court vacated the bankruptcy court's order and remanded the case with the express command for the bankruptcy court to determine whether conversion or dismissal would be in the best interest of the creditors. 349 B.R. at 498.

The Court need not decide whether it can deny a motion to convert under an extreme circumstances exception (whether derived from § 105(a) or otherwise), because such an exception would not change the Court's decision in this case.

Importantly, the Conversion would not prejudice the creditors of the estate or constitute an abuse of the bankruptcy process.  Here, unlike *Marrama* and *Alder*, this Conversion obviously does not prejudice creditors by slowing down payments in liquidation.  Further, unlike *Monroe*

---

[6] *Alder* is distinguishable from this case because in *Alder* the United States Trustee had a pending motion to dismiss when the debtor sought conversion to Chapter 7. *In re Adler*, 329 B.R. 406, 408 (Bankr. S.D.N.Y. 2005).

9

*Bank*, the Debtor is not an individual trying to convert in order to obtain earnings accrued during the pendency of the Chapter 11 case. There are no such assets. To the contrary, the parties agree that the only potentially distributable asset held by the Debtor is the 1983 Claim. If the case were to be dismissed and the Respondent's contentions as to the continued existence of the receivership estate are correct, the receivership estate would hold a cause of action against itself. Because the Respondent has no incentive to pursue a claim against itself, the 1983 Claim's value, if any, can only be realized in a conversion to Chapter 7. Thus, the Conversion is the only practical chance that the creditors of the estate will receive anything. Even if the 1983 Claim has no value to the estate, as contended by the Respondent, the Respondent has not shown that a determination of this fact by a Chapter 7 trustee will hurt the creditors of the estate. Accordingly, there is no abuse of process in this case, and § 105(a) is not implicated.

As an aside, the Debtor's alleged pre-conversion misconduct would not necessarily dictate the dismissal of the converted Chapter 7 case. Under § 707(a), bad faith can constitute cause for dismissal where, on a totality of the circumstances analysis, the Court finds "deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *In re Piazza*, 719 F.3d at 1272. While the Debtor's principal is subject to allegations of serious pre-conversion misconduct, the Respondent has failed to explain why the alleged misconduct would prevent an orderly distribution of the Debtor's assets in Chapter 7. Though the Debtor may not be the honest, unfortunate debtor entitled to a fresh start, the Debtor is not seeking a fresh start, but an orderly liquidation under Chapter 7 that primarily benefits creditors. This is not a "misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code."

In summary, the Court holds that there is no extreme circumstances exception present in § 1112, and, even assuming that the Respondent's allegations are true, these allegations do not constitute the extreme circumstances necessary to deny conversion from Chapter 11 to Chapter 7 under this Court's equitable powers. Therefore, the Respondent's objection must be overruled as

a matter of law.  An order granting the Conversion will be entered if and when the Respondent's motion requesting the Court to alter or amend its order denying dismissal of the case is denied.

[END OF DOCUMENT]